**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CEDRIC O. BROOKS,**

**Petitioner,**

**vs.**                                                                          **Case No. 4:11cv346-MW/CAS**

**MICHAEL D. CREWS, Secretary,
Florida Department of Corrections,**

**Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On July 13, 2011, Petitioner Cedric O. Brooks, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. On April 11, 2012, Respondent filed an answer, with exhibits. Doc. 19. Petitioner filed a reply on April 26, 2012. Doc. 21.

Thereafter, on March 14, 2013, Petitioner filed a motion seeking to add a "substantive equal protection claim based on the Government's improper exercise of its peremptory challenge" under Ground 1, "if the claim was not properly addressed." Doc. 25. On April 9, 2013, Respondent filed an objection to Petitioner's motion to amend. Doc. 26. By order dated, this Court allowed the amendment and accepted Petitioner's attachment to his motion as a supplement to his § 2254 petition. Doc. 27. On July 9,

2013, Respondent filed a supplemental answer.  Doc. 29.  Petitioner filed his

supplemental reply on July 31, 2013.  Doc. 33.

The matter was referred to the undersigned United States Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida

Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has

determined that no evidentiary hearing is required for disposition of this matter.  *See*

Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to

federal habeas relief, and the § 2254 petition should be denied.

## State Court Proceedings

By information filed on May 18, 2006, in the Second Judicial Circuit, Leon

County, in case number 06-CF-01795, the State of Florida charged Petitioner Cedric O.

Brooks with one count of lewd or lascivious molestation, a second degree felony, in

violation of section 800.04(5)(c)2., Florida Statutes, in connection with events that took

place on April 23, 2006, involving victim B.B., a person twelve (12) years of age or older

but less than sixteen (16) years of age.  Doc. 19 Ex. B.  Brooks proceeded to jury

selection on April 30, 2007, and then to trial on May 2 and 3, 2007, during which several

witnesses testified, including Brooks; both jury selection and the trial were presided over

by Judge John Cooper.  *Id.* Exs. C, D.  The jury found Brooks guilty as charged.  *Id.* Ex.

D at 363, Ex. F (verdict form).  On June 11, 2007, Judge Cooper sentenced Brooks to

ten (10) years in prison, to be followed by two (2) years of sex offender probation, plus

various fines and surcharges as well as credit for forty-five (45) days time served.  *Id.*
Exs. G, H1, H2.

Brooks appealed his judgment and sentence to the First District Court of Appeal
(DCA), assigned case number 1D07-3376.  *See* Doc. 19 Exs. I, N; Doc. 1 Ex. C.  During
the pendency of the appeal, Brooks also filed a motion in the state trial court pursuant to
Florida Rule of Criminal Procedure 3.800(b)(2), asserting error in the assessment of
certain fines and surcharges.  Doc. 19 Ex. J.  By order rendered February 29, 2008,
Judge Terry P. Lewis partially denied the motion, directed the State to show cause why
the first ground of Brooks' motion should not be granted concerning certain surcharges,
and set that ground for a calendar call.  *Id.* Ex. K.  By subsequent order rendered March
6, 2008, Judge Lewis granted relief on the first ground of the motion, directing that
certain fines and surcharges be stricken and an amended judgment entered nunc pro
tunc to June 11, 2007.  *Id.* Exs. L, M.

Thereafter, Brooks' appellate attorney filed an Initial Brief in the First DCA,
raising three points on appeal.  Doc. 1 Ex. C.  The State filed an Answer Brief.  Doc. 19
Ex. N.  The First DCA affirmed the case per curiam without an opinion on May 20, 2009.
*Id.* Ex. O; *see* Brooks v. State, 8 So. 3d 1135 (Fla. 1st DCA 2009) (table).

On June 4, 2009, Brooks filed in the state trial court a pro se motion for post-
conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, with attachments,
asserting seven claims.  Doc. 19 Ex. P.  Judge Lewis directed the Office of the State
Attorney to file a response.  Doc. 1 Ex. FA.  On February 2, 2010, the State filed a
response.  Doc. 19 Ex. R.  Brooks filed a reply and an addendum.  *Id.* Exs. S, T.  Judge

Lewis set the motion for an evidentiary hearing, which took place on October 19, 2010, before Judge James C. Hankinson, and during which Brooks and his former trial counsel testified. *Id.* Ex. U. By order rendered October 21, 2010, Judge Hankinson denied the Rule 3.850 motion "[b]ased on the reasons announced on the record" during the evidentiary hearing and finding Brooks "has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency." *Id.* Ex. V.

Brooks appealed, pro se, to the First DCA, and filed an initial brief raising seven points in case number 1D10-5669. Doc. 19 Exs. W, X. The State filed a notice that it would not submit an Answer Brief. Doc. 1 Ex. FD. The First DCA issued a per curiam affirmance without an opinion on May 3, 2011. Doc. 19 Ex. Z; *see* Brooks v. State, 63 So. 3d 752 (Fla. 1st DCA 2011) (table). Brooks filed a motion for rehearing and rehearing en banc. Doc. 1 Ex. G. The First DCA denied the motion by order on June 22, 2011. Doc. 19 Ex. AA. The mandate issued July 8, 2011. *Id.* Ex. Z.

Meanwhile, on July 29, 2009, Brooks also filed a pro se petition for writ of habeas corpus in the First DCA alleging four claims of ineffective assistance of appellate counsel on direct appeal, assigned case number 1D09-3828. Doc. 19 Ex. BB. The First DCA denied the petition on the merits, without explanation, on August 20, 2009. *Id.* Ex. CC; *see* Brooks v. State, 18 So. 3d 1112 (Fla. 1st DCA 2009). Brooks filed a motion for rehearing and rehearing en banc, which the First DCA denied by order on October 7, 2009. Doc. 19 Exs. DD, EE.

On August 23, 2010, Brooks filed a second petition for writ of habeas corpus in
the First DCA, alleging ineffective assistance of appellate counsel. *Id.* Ex. FF. The First
DCA denied this petition on the merits, without explanation, on October 29, 2010. *Id.*
Ex. GG; Brooks v. State, 46 So. 3d 1134 (Fla. 1st DCA 2010).

As indicated above, on July 13, 2011, Brooks filed a timely § 2254 petition in this
Court. Doc. 1. Brooks subsequently filed a second Rule 3.850 motion in the state trial
court. Doc. 19 Ex. HH. By order rendered September 14, 2011, the state court denied
that motion as untimely and, alternatively, on the merits. *Id.* Ex. II. Brooks appealed to
the First DCA, assigned case number 1D11-5198, and filed an Initial Brief. *Id.* Exs. JJ,
KK. The State filed a notice that it would not file an Answer Brief. *Id.* Ex. LL. The First
DCA issued a per curiam affirmance, without opinion, on December 7, 2011. Brooks v.
State, 75 So. 3d 720 (Fla. 1st DCA 2012) (table). The mandate issued January 4, 2012.
Doc. 19 Ex. MM.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for
persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker,

633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131

S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford

v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that

was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct.

at 1388.

For claims of ineffective assistance of counsel (IAC), the U.S. Supreme Court

adopted a two-part test:

First, the defendant must show that counsel's performance was deficient.
This requires showing that counsel made errors so serious that counsel
was not functioning as the "counsel" guaranteed the defendant by the

Sixth Amendment.  Second, the defendant must show that the deficient
performance prejudiced the defense.  This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial, a trial
whose result is reliable.

Strickland, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show

that counsel's performance fell below an objective standard of reasonableness."  *Id.* at

688.  To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state court's

determination' under the Strickland standard 'was incorrect but whether that

determination was unreasonable – a substantially higher threshold.'"  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473

(2007)).  "And, because the Strickland standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that

standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard."  *Id.*

     In his § 2254 petition, Brooks raises seventeen (17) claims, asserting trial court

error and ineffective assistance of counsel (IAC):

          (1) Petitioner's federal and state constitutional rights to equal protection
          and an impartial trial were violated when the trial court committed
          reversible error by failing to determine whether the State's peremptory
          challenge to Mr. Leonard Perteet (black male) was genuine or a pretext for
          racial discrimination.

(2) Petitioner's federal and state constitutional rights to equal protection and impartial jury were violated when the trial court failed to determine whether Petitioner's trial counsel's final peremptory challenge strike on Ms. Mfon Barney was genuine or a pretext for discrimination.

(3) IAC - Petitioner's federal and state constitutional rights to equal protection and effective trial counsel were violated when trial counsel failed to properly preserve and renew, for appellate review, his <u>Neil</u> jury objection on a black man.

(4) Petitioner's federal and state constitutional rights to due process, equal protection, and an impartial trial were violated when the court allowed the State concluding closing arguments when Petitioner did not present evidence other than his own testimony.

(5) Petitioner's state and constitutional rights to an impartial trial, due process, and equal protection were violated when the prosecutor committed fundamental error during closing arguments.

(6) Petitioner's federal and state constitutional rights to due process and an impartial jury were violated when the alleged victim's police interrogation video deposition was not shown to the jury and used as substantive evidence.

(7) Petitioner's constitutional rights to equal protection, due process, and effective counsel were violated based on a manifest injustice because of the alleged victim recanting her statements, making inconsistent statements, and being under the influence of drugs at the time of the alleged incident.

(8) IAC - Petitioner's federal and state constitutional rights to due process and effective trial counsel were violated when trial counsel agreed to a fraudulent motion to continue the trial by the State.

(9) Petitioner's federal and state constitutional rights to due process, equal protection, and a fair trial were violated when trial counsel did not use a cause challenge strike for Mr. Robert Lide who had two prior criminal records.

(10) Petitioner's federal and state constitutional rights to due process, equal protection, and a fair trial were violated when trial counsel refused to use a cause challenge strike on Mr. Andrew Gibbens, who knew the presiding judge personally.

(11) Petitioner's federal and state constitutional rights to due process, equal protection, and an impartial trial were violated when trial counsel did not use a cause challenge on Ms. Ella Goodwin who knew a witness for the State.

(12) IAC - Petitioner's federal and state constitutional rights to due process, equal protection, and effective trial counsel were violated when trial counsel did not use vital witnesses for Petitioner.

(13) IAC - Petitioner's federal and state constitutional rights to due process, equal protection, and effective trial counsel were violated when trial counsel failed to impeach witnesses.

(14) Petitioner's federal and state constitutional rights to due process and equal protection were violated when denied counsel for post-conviction evidentiary hearing.

(15) IAC - Petitioner's federal and state constitutional rights to due process, equal protection, effective counsel, and an impartial trial were violated when trial counsel failed to investigate Petitioner's case.

(16) IAC - Petitioner's federal and state constitutional rights to due process, equal protection, an impartial trial, and effective counsel were violated when trial counsel failed to form an affirmative defense for Petitioner.

(17) Petitioner's federal and state constitutional rights to due process and equal protection were violated when the state court did not grant Petitioner's Rule 3.850 motion due to the State being time-barred and in non-compliance with the court's show cause order.

Doc. 1 at 4-13.  For organizational purposes, the claims involving jury selection are addressed collectively first (Grounds (1) and (2), as well as those involving IAC in jury selection (Grounds (3), (9), (10), and (11)), followed by the remaining claims of trial court error (Grounds (4), (5), (14), and (17)), and then the remaining IAC claims (Grounds (6), (7), (8), (12), (13), (15), and (16)).

**Jury Selection Claims**

<u>Ground (1)</u>: **Trial Court Error on State's Peremptory Challenge to Juror Perteet**

<u>Ground (2)</u>: **Trial Court Error on Defense Peremptory Challenge to Juror Barney**

<u>Ground (3)</u>: **IAC – Failure to Preserve Neil Objection for Appellate Review**

<u>Ground (9)</u>: **IAC – Failure to Challenge for Cause Juror Lide**

<u>Ground (10)</u>: **IAC – Failure to Challenge for Cause Juror Gibbens**

<u>Ground (11)</u>: **IAC – Failure to Challenge for Cause Juror Goodwin**

In each of these grounds, Petitioner Brooks alleges either trial court error or ineffective assistance of counsel concerning issues related to jury selection.  *See* Docs. 1, 25.  As Respondent indicates in the Answer, for each of these grounds, Brooks raised a claim in state court only as a claim of IAC.  *See* Doc. 19 at 15-18, 33-34, 39-40, 88-89, 96-97, 103-04; Doc. 19 Ex. P at 7-11.  Accordingly, to the extent Brooks here asserts trial court error (Grounds (1) and (2)) or claims other than those asserted in state court, such claims were not exhausted and are now procedurally barred.

Further, to the extent Brooks asserts claims of IAC, whether trial or appellate, such claims lack merit as Brooks cannot show deficient performance or prejudice.  In particular, at the conclusion of the evidentiary hearing, the state post-conviction trial court made the following findings in denying Brooks' jury selection claims:

> The first relates to jury selection.  He claims that Mr. Collins didn't properly preserve objections relating to the race neutral reasons.  I don't find that to be proven.  In fact, he did preserve objections.  I don't know whether that was an issue on appeal, but it could have been an issue on appeal.  And if it was an issue on appeal, the First DCA apparently was not concerned with it.

His second contention by Mr. Brooks was that he was prohibited from participating in the jury selection process. That simply is not proven. In fact, the record establishes that that's untrue. It's of record that Mr. Brooks agreed to the jury and he at least states in the record that he participated in the process. I accept Florida [sic] Mr. Collins' testimony that it would be absurd to tell Mr. Brooks that he could not have a say in the jury selection and I reject that grounds.

Doc. 19 Ex. U at 75.

As an initial matter, the transcript of the jury selection contains the following:

THE COURT: . . . Is that jury acceptable to the State?

MR. WADE [prosecutor]: Yes, sir.

THE COURT: To the defense?

MR. COLLINS [defense counsel]: Yes, sir. And I have spoke with my client about the way we have picked the jury and he is in agreement. Correct, Mr. Brooks?

THE DEFENDANT: Yes, sir.

THE COURT: And Mr. Brooks, I've noticed you have been paying close attention to the case, and have been taking notes and consulting with your attorneys, is that jury and alternate acceptable to you?

THE DEFENDANT: Yes, sir.

Doc. 19 Ex. C at 112. Given this, the state post-conviction trial court reasonably found,

implicitly if not explicitly, that Brooks could not establish deficient performance because

Brooks was actively engaged in the jury selection process, had consultations with his

attorney regarding the jury, and affirmatively accepted the jury as seated. *See, e.g.*,

Moreno v. Sec'y, Dep't of Corr., No. 2:09cv336-FtM-29DNF, 2012 WL 2282552 at *9

(M.D. Fla. June 18, 2012) (opinion and order of district judge denying § 2254 petition

which asserted, among other things, denial of right to fair and impartial jury and IAC for

failure to object and/or properly question during voir dire, and explaining state post-conviction court properly concluded no deficient performance or prejudice shown where defendant was consulted about whether he was satisfied with jury panel, defendant conferred with counsel about prospective panel, and defendant specifically indicated on record that he was satisfied with jury).

Indeed, Brooks has waived the IAC claims regarding the jury selection because he affirmatively accepted the jury in open court. *See, e.g.,* Cookinson v. Sec'y, Fla. Dep't of Corr., No. 8:10cv1751-T-23MAP, 2013 WL 5487046 at *5 (M.D. Fla. Sept. 30, 2013) (order by district judge denying § 2254 petition that alleged IAC concerning defense counsel's failure to preserve challenge pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), for appellate review, finding Petitioner did not show prejudice due to counsel's failure to object to prosecutor's reason for striking juror as "[h]ad counsel objected to the stated reason on the basis that it was not supported by the record, it is unknown whether the prosecutor would have then stated a race-neutral reason supported by the record, much less whether the outcome of the trial would have been different," and noting "the trial court record reveals that Petitioner personally accepted the jury panel before it was sworn when questioned by the judge" and "[i]t was reasonable to assume from Petitioner's action that he abandoned his earlier objection"); Franklin v. Buss, No. 11-60306-civ-Lenard, 2011 WL 4005474 at *7 (S.D. Fla. Aug. 16, 2011) (magistrate's report to deny § 2254 petition which included claims of IAC regarding jury selection and explaining, "Franklin is precluded from attacking counsel's effectiveness with regard to the [Juror] Harrison because he accepted the jury, including

Harrison, in open court.  He waived the present claim of ineffective assistance.  Counsel

cannot be deemed deficient for failing to pursue this waived argument." (citations to

record and cases omitted)).  *See also, e.g.*, Trotter v. State, 576 So. 2d 691, 693 (Fla.

1990) ("The defendant cannot stand by silently while an objectionable juror is seated

and the, if the verdict is adverse, obtain a new trial.").

A few additional findings may be made concerning Petitioner's particular grounds

regarding jury selection.  Brooks argues he is an African-American male, the victim is a

white female, and he had an "all white jury in which some blacks were excluded for

reasons equally applicable to unchallenged white jurors."  Doc. 1 at 8; *see id.* at 5-6, 9-

10.  In Grounds (1), (2), and (3), Brooks raises arguments involving Batson v. Kentucky,

476 U.S. 79 (1986), and the racial composition of the jury, and in Grounds (9), (10), and

(11), argues that defense counsel should have pursued challenges for cause against

three jurors ultimately chosen for the jury.  *See* Docs. 1, 25.

The transcript of jury selection reflects two agreed cause challenges (for Mr.

Flanagan and Ms. Sims), four peremptory challenges by the State (for Mr. Oglesby, Ms.

Paul, Ms. Pate (white), and Mr. Parteet (black), as alternate), and six peremptory

challenges by the defense (for Mr. Chance, Mr. Jones, Ms. Norden, Mr. Schwartz, Ms.

Barney (black), and Mr. Sewell):

> THE COURT:  All right.  So we're all back on the record. We have counsel
> for the State and defense are present.  The defendant is present.  There
> are six challenges per side; is that correct?
>
> MR. WADE: Yes, sir.

THE COURT: All right. So the first group, Mr. Wade, will be Schwartz, Oglesby, Barney, Flanagan, Goodwin, and Paul.  Do you have any challenges to that group?

MR. WADE:  Judge, I believe we have an agreed upon challenge for cause as to Juror Flanagan.

MR. COLLINS:  That's correct.

THE COURT:  I agree. I think that's a reasonable cause challenge.  So, on this case simply because of all the information he's heard.  I assume the basis for his cause challenge.

MR. WADE: Actually, my basis is he has an opinion about a witness's credibility, Dr. Hank Hightower.

THE COURT:  Correct.

MR. WADE:  That he indicated would affect his perception of that witness's testimony.

THE COURT:  Okay.  Anymore?

MR. WADE:  Not as to those six.

THE COURT:  Okay. Mr. -- that would bring in Mr. Gibbens is the next one for the group of six, over to Mr. Collins.

MR. WADE:  Judge, I'm sorry. I didn't mean no peremptories.

THE COURT:  You meant no more cause challenges.

MR. WADE:  Yes, sir.

THE COURT:  All right. Do you have any more -- any peremptories as to that group?

MR. WADE:  Yes, sir.  We would exercise a peremptory on Mr. Oglesby and Ms. Paul.

THE COURT:  Okay.  Oglesby and Paul.

MR. COLLINS: Your Honor, just so the record is clear, the reason I am not make [sic] a [State v.] Neil[, 457 So. 2d 481 (Fla. 1984),] or [State v.] Slappy[, 522 So. 2d 18 (Fla. 1988),] challenge is it was abundantly clear to me that she indicate[d] that she had bad feelings against the State Attorney's office. And I think that satisfies the race-neutral reason rather than just make all that talk.

THE COURT:  I agree. I took quite a few notes about that. In addition to that, problem with the State Attorney, bad feelings about her -- the trial involving her nephew left her with bad feelings, and also she has a son-in-law who grew up with the defendant.  I think those would all be race-neutral, non-pretext reasons.

So, anymore, Mr. Wade?  I have two challenges and one cause challenge.  Is that all for this group at this time?

MR. WADE:  Yes, sir.

THE COURT:  Let me make sure. We struck Oglesby and Paul and Flanagan.  And that would then bring in -- to round out a group of six for Mr. Collins, Gibbens, Chance, and Norden.  All right.  Mr. Collins, do you have any challenges to that group of six?

MR. COLLINS:  Yes, Your Honor. I would exercise a peremptory challenge or [sic] Mr. Chance.

THE COURT:  Just a second.  Olgesby, for the State and Mr. Chance, William Chance for defense.  Anymore in that group at this point?

MR. COLLINS:  Not at this point.

THE COURT:  That brings in Mr. Jones to round out your group of six, Mr. Wade.  What do you say as to that group of six?

MR. WADE:  No peremptories no cause.

THE COURT:  Back to Mr. Collins.

MR. COLLINS:  Your Honor, I would exercise a peremptory against Mr. Jones.

THE COURT: Okay.  Mrs. Jones.  So anymore of this group at this time?

MR. COLLINS:  Not from the defense, your Honor.

THE COURT:  Okay.  That brings in Mr. Cloud, Mr. Wade, to round out the group of six. And for the record we have Schwartz, Barney, Goodwin, Gibbens, Norden, Cloud.  Any challenges to that group?

MR. WADE:  No, sir.  No peremptory, no cause.

THE COURT:  Back to Mr. Collins.

MR. COLLINS:  Yes, Your Honor. I would strike Diane Norden.

THE COURT:  All right.  Anymore in this group?

MR. COLLINS: Not at this time.

THE COURT: That brings in Ms. Pate as the sixth juror, back to Mr. Wade.

MR. WADE:  No, peremptories, no cause.

THE COURT:  Mr. Collins?

MR. COLLINS:  I'll strike Mr. Schwartz, number one position.

THE COURT:  Any more?

MR. COLLINS:  Not at this time.

THE COURT:  All right.  The State has used two, the defense has used four. That brings Mr. Lide as the next one for the group of six.  Back to Mr. Wade.

MR. WADE:  Yes, sir.  We would excuse Ms. Pate.

THE COURT:  Pate for the State.  Any more of this group, Mr. Wade?

MR. WADE:  No, sir.

MR. COLLINS:  And Your Honor, the reason I'm not making any type of peremptory challenge on Ms. Pate, is I think the record is established a gender-neutral reason given her experience with her daughter.

THE COURT:  Yes. She had bad feelings as a result of her daughter's involvement in the system.

MR. COLLINS: But I want to make sure the record is clear she also said the chief problem -- one of her major problems was her defense attorney.

THE COURT:  Right. She is a white female, for the record.

MR. COLLINS: Sure.

THE COURT: All right. That brings in as the next person to consider, the Ms. Sims.

MR. WADE: I think we're in agreement there's a cause on Ms. Sims.

THE COURT:  I agree. Based on the remarks, I don't think I need to make any comment, based upon the remarks.  In this particular case I think there was cause challenge.

So that would bring in Ms. Katz.  Mr. Collins, I believe it's your turn.

MR. COLLINS:  No, challenges at this time.

THE COURT: Back to Mr. Wade.

MR. WADE: No cause, no peremptory.

THE COURT: Mr. Collins.

MR. COLLINS: I need a moment.

THE COURT: All right.

(SHORT PAUSE)

MR. COLLINS:  Your Honor, we would strike Ms. Barney.

MR. WADE:  I would ask for a race-neutral reason on that one.

THE COURT: She is a black female?

MR. COLLINS: That's correct. Your Honor, she had some ties to law enforcement.

THE COURT:  She did?

MR. COLLINS:  I take it back, said financial office.

MR. WADE:  Financial services office.  I assume that meant with a bank.

THE COURT:  Right.

MR. COLLINS:  Yes.  Judge, she is a mother of two juvenile children and we feel that there might be sympathy for the young girl who's the alleged victim in this case.  There's going to be testimony that the young girl, I believe, came down to the police station twice with her mother.  And I think that she would be showing sympathy because of that.

THE COURT:  Mr. Wade, do you have any comment?

MR. WADE:  Judge, her children, by my recollection are two and I three and a half.  I didn't think she was in a – and I am not sure if she told us if they were male or female.  But in any event, I didn't see – I don't see the issue, unless there's something else.  She indicated no law enforcement friends or acquaintances, and no – nobody that's been a defendant, as best I can determine from my notes.

THE COURT:  I'm going to find it's race-neutral reason, that it's not pretext. So I'll grant the peremptory.

You have used five and that brings in Mr. Sewell for that Mr. Wade, do you have any objections to that group?

MR. WADE:  No, sir.

THE COURT:  Mr. Collins?

MR. COLLINS:  Yes.  We would strike Mr. Sewell.

THE COURT:  That's your last challenge, you recognize that?

MR. COLLINS:  Yes, Judge. All right. That brings in Mr. Ahmed.  Mr. Wade, do you have any objection to that group?

MR. WADE:  If I may have just a moment, Judge?

THE COURT: Certainly.

MR. WADE:  No, sir.

THE COURT: So that must be our jury then, do you have any challenges for cause for anyone else, Mr. Collins?

MR. COLLINS:  No, Your Honor.

THE COURT:  All right.  So our jury is Ella Goodwin, Andrew Gibbens, Steven Cloud, Robert Lide, Linda Katz.  And Amr Ahmed.  Is that correct?

MR. COLLINS:  Yes, sir.

MR. WADE:  Yes, sir.

THE COURT:  What about alternate?  Mr. Perteet.

MR. COLLINS:  No objection.

THE COURT:  Mr. Wade?

MR. WADE:  I would exercise a challenge on Mr. Perteet.

THE COURT:  Let's see.

MR. COLLINS:  We would ask for a race-neutral reason in that he's a black male.

MR. WADE:  I concur for the record that prospective juror is a black male. He's single, a truck driver, most critically he had a theft case involving checks, was prosecuted and received probation and he's off now. His prior history a coupled with my subjective assessment of how he responded to questions is my reason.

THE COURT:  Mr. Collins, any arguments you wish to make?

MR. COLLINS:  No Judge.

THE COURT:  All right. I think that's a race neutral reason.  As I indicated on Mr. Collins' challenge.  And I do not think it's a pretext that he did testify that he was charged with theft involving checks three years ago and he

pled to that.  He pled to probation.  So I'll grant that challenge. So, David Snyder, Mr. Collins, do you have any objections to Mr. Snyder?

MR. COLLINS:  No, Your Honor.

THE COURT:  Any cause challenge to Mr. Snyder?

MR. WADE:  No, sir.

THE COURT:  So he'll be our alternate.  Is that jury acceptable to the State.

MR. WADE: Yes, sir.

THE COURT: To the defense?

MR. COLLINS: Yes, sir. And I have spoke with my client about the way we have picked the jury and he is in agreement. Correct, Mr. Brooks?

THE DEFENDANT: Yes, sir.

THE COURT: And Mr. Brooks, I've noticed you have been paying close attention to the case, and have been taking notes and consulting with your attorneys, is that jury and alternate acceptable to you?

THE DEFENDANT: Yes, sir.

THE COURT:  All right.  Let's bring in the whole jury panel.

(PROSPECTIVE JURORS ENTER COURTROOM)

THE COURT:  All right. Everybody can have a seat.  And I'll note for the record the jury panel has returned.  Counsel for the State and defense are present, defendant is present.

I'm pleased to advise you that the attorneys have succeeded in selecting a jury and an alternate. I'm going to read off the names, the seven names of the jury and alternate and give you some instructions . . . .
Okay.  On the jury for the case of State of Florida versus Cedric Brooks is: Ella Goodwin, Andrew Gibbens, Steven Cloud, Robert Lide, Linda Katz, Amr Ahmed, and David Snyder.

Have I correctly read the names, Mr. Wade?

MR. WADE:  Yes, sir.

THE COURT:  Mr. Collins?

MR. COLLINS:  Yes, sir.

THE COURT:  And is that jury and alternate acceptable to the State and defense?

MR. WADE: Yes –

MR. COLLINS:  Yes, sir.

THE COURT:  I'll note that they said yes at the same time, for the court reporter's sake.

Doc. 19 Ex. C at 103-14.  The jury thus consisted of four males (Gibbens, Cloud, Lide, and Ahmed) and two females (Goodwin and Katz), with a male alternate (Snyder).  The racial composition is not apparent from the record.

Similarly, the racial composition for the group of stricken prospective jurors is not readily apparent except that Ms. Pate, stricken by the State, is white; Ms. Barney, stricken by the defense, is black; and Mr. Parteet, the alternate stricken by the State, is black.  Defense counsel conceded the State's strike of Ms. Paul was race-neutral, but the record does not reflect her race.  The only State strike to which defense counsel raised an objection was for the alternate, Mr. Parteet, and the court found the reason offered by the prosecutor was race-neutral and not a pretext.  Defense counsel did not press further, and did not renew an objection at the conclusion of jury selection, accept the jury with this reservation, or object again prior to the swearing in of the jury.  "Under Florida law, simply objecting to the state's possibly discriminatory strikes, and then countering any purportedly race-neutral explanation given by the prosecution, does not

suffice to preserve a <u>Batson</u> claim for appeal." <u>Davis v. Sec'y, Dep't of Corr.</u>, 341 F.3d 1310 (11th Cir. 2003).  "Rather, trial counsel must press the already rejected challenge a second time at the conclusion of voir dire, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim."  *Id.*  Given this, the state post-conviction trial court erred in finding defense counsel had preserved "the Neil objection" for appellate review.  Doc. 19 Ex. U at; see Doc.19 Ex. U at 50-52 (defense counsel's testimony at Rule 3.850 evidentiary hearing that he thought his actions and objection sufficient to preserve point for appeal).  Nonetheless, any error by the court in this finding does not warrant federal habeas relief because, as explained above, the record supports the court's findings that Brooks participated in the jury selection process and specifically agreed to the jury, thereby waiving any jury selection claims.

In addition, notably, Grounds (1), (2), and (3) involve Juror Parteet and counsel's alleged ineffectiveness for not having the trial court determine whether the State's peremptory challenge to him was genuine or a pretext for racial discrimination.  Doc. 1 at 4.  As Respondent indicates in the Answer, Juror Parteet would have served as the alternate juror for Petitioner's trial.  *See* Doc. 19 at 47; Doc. 19 Ex. C at 111-12.  Any deficiency by counsel regarding this stricken alternate juror could not have prejudiced Brooks because the alternate juror ultimately chosen was excused after closing arguments, and did not participate in deliberations or render the verdict.  *See* Doc. 19 Ex. C at 112, Ex. D at 345-46.  *See also, e.g.*, <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001) (explaining that "[t]he Supreme Court has not said whether or not <u>Batson</u> requires automatic reversal when a prosecutor wrongly excludes an alternate juror, but

no alternate joins deliberations"); <u>Franklin</u>, 2011 WL 4005474 at *7 ("Franklin waived

any objection to [Juror] Gieske by accepting the jury in open court.  Moreover, any

deficiency by counsel could not have prejudiced Franklin because Gieske was an

alternate juror and did not participate in deliberations or render the verdict.  Accordingly,

even if Franklin had not waived this claim, he would be unable to demonstrate prejudice

because counsel's alleged deficiency could not have affected the fairness or outcome of

trial.").

      Further, in Grounds (9), (10), and (11), Brooks argues trial counsel rendered

ineffective assistance by failing to pursue challenges against Jurors Lide (for prior

criminal record of arrest for possession of marijuana and guilty plea to DUI), Gibbens

(who knew the presiding Judge John Cooper), and Goodwin (who knew a State witness,

Charlie Yontz).  In denying these claims, the state post-conviction court made the

findings quoted above concerning Brooks' participation in jury selection and acceptance

of the jury.  It should also be noted that Charlie Yontz did not testify at Brooks' trial.  *See*

Doc. 19 Ex. D at 2, 103-04.  Moreover, the record supports the court's finding, implicit if

not explicit, that defense counsel did not perform deficiently.

      In particular, at the evidentiary hearing, defense counsel, David Collins, testified

that he informed Brooks regarding each stage of the trial process and his normal

practice is to have his clients actively participate during jury selection, making sure

Brooks agreed with his decisions:

> Q Okay.  Now, I would like to go through some of the allegations from Mr.
> Brooks' motion.  First of all, have you had the opportunity to pick the juries
> in most, or in the majority of your cases?

A I think I've picked all of the juries in all of my cases.

Q Oh, then your non – bench trials?

A Yes, sir.

Q Then are you familiar with Neil challenges and Batson challenges and various race neutral requirements for striking juries of (inaudible)?

A Yes, sir.

Q Were you well apprised of that case law at the time of this case?

A Yes, sir.
. . . .

Q In trying to decide a jury, do you decide jurors purely on race?

A Absolutely, not.

Q Are you – based on your experience, would you strike a jury just because they were white, or just because they were black?

A Absolutely, not.

Q Do you have a standard protocol when working with a client during a jury selection phase of their cases?

A I certainly, do.

Q Is it your protocol to give your clients a pad to take notes so that they might be able to articulate any concerns during that process?

A That is the protocol.  I inform them that I would really like you to write down any questions that you may have, or anything that you think is important.  And I do that two-fold: One, is I don't want to be distracted by a tug in my ear because that not only distracts me, it also distracts the folks that I'm trying to understand and the perspective [sic] jurors.  And second, over the years I have felt that it's generally been effective to have an accurate record of what my clients thoughts are.

Q And in your representation of Mr. Brooks, did you recall and did you follow your normal practice, as far as trying to engage him and get his participation during jury selection?

THE COURT: Mr. Campbell, we're doing an awful lot of leading questions to the witness.  I knew we have a pro-se litigant and he doesn't know to object.  But I would prefer you not constantly lead the witness, please.

BY MR. CAMPBELL:

Q What did you do in this case?

A I would have to tell you, the Court, and Mr. Brooks that my memory as to exactly what we said or what we did would never be accurate three years later.  I could only state that I would agree with Mr. Brooks that I gave him a pad and I asked him to write down any questions or thoughts he had, given the case.

        Now, answering the second part of your question, which I think it was in regards to what did I do with Mr. Brooks regarding selection of jury, I listen to my clients if they have a question.  I certainly, take that into effect.  I do not discount what they say.  And that's what I would have done in this case and certainly I would have made sure that he agreed with my decisions, or disagreed.

Q Did you tell him prior to jury selection that when he came to court this was jury selection?

A You know, I would probably not – I don't remember.  To me it would be self evident.  I don't think I would allow him to go through any process of a trial without him understanding what process we ere in and what stage, as he stated.  He has a Masters degree.  So I consider him to be a fairly intelligent person at that time, so that he would understand it was jury selection.

Q Do you explain prior to his trial the various stages of trial and his role during them?

A I am certain I did.  Again, it's been over three years ago; I can't say exactly.  But there is no question in my mind today that he certainly understood what we were doing, what was the purpose of each.

Doc. 19 Ex. U at 46-50.  Mr. Collins further testified regarding factors he considers when

deciding whether to strike a juror and explained that it varies depending on the group

involved and how the State exercises strikes in a particular case:

> Q Do you have any memory of a juror who had a history of marijuana and DUI?
>
> A I would have to reflect on the record, I have absolutely no memory, given the number of trials I've had since then.
>
> Q Would you strike somebody purely because they had a possession of marijuana, or DUI in their history?
>
> A That being a threshold, that if they have that they automatically get stricken?
>
> Q Yes, sir.
>
> A No.
>
> Q Would you automatically leave somebody on, if that was the only factor?
>
> A No.
>
> Q Would you strike somebody because of contacts, or a relationship with law enforcement?
>
> A No.  And if I may say this: My decisions to strike or not strike a jury are based on a lot of factors that are taking place between all the perspective [sic] jury members, about from what the State is doing, in terms of their jury selection.  I don't believe we really select jurors, as much as we try to keep jurors off.  And then we're stuck with who were left.
>
> So to ask me specific questions about this process, I really don't know.  Every jury selection is different based on the inner dynamics of the group.  So I can't say any factor would necessarily, matter.  I just had a trial in Live Oak where I left a police officer on the jury and it worked to our benefit.  So, I don't know.

Id. at 52-53.  Finally, Mr. Collins indicated that, at the conclusion of the jury selection, he discusses the jury with his client and confirms on the record that the client participated in and agrees with the jury selection:

> Q At the conclusion, regardless of your strike, would you discuss your overall jury that you're left with, with your client?
>
> A Yes, and that should be reflected on the record.  If it's not then there must be some reason, because I always want to make sure for the record that my client agrees with jury selection and that he was present, and able to participate in such, because over the years having practiced both post conviction and trial that's an issue, if that's not included.
>
> If, in fact, what Mr. Brooks says is correct – I'm not saying it is – but if it is and the record bares him out, then that's an issue.  I don't believe that what he's saying occurred, and I think the record should reflect that.

Id. at 53.  As indicated above, the record does reflect that Brooks was actively engaged in the jury selection process, had consultations with his attorney regarding the jury, and affirmatively accepted the jury as seated.

Based on the foregoing, Petitioner Brooks has not shown that any state courts' rulings rejecting these grounds resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(1)-(2). These grounds should be denied.

**Claims of Trial Court Error**

**<u>Ground (4)</u>: Court Allowed State Concluding Closing Argument**

In his fourth ground, Petitioner Brooks asserts the state trial court erred in

allowing the State concluding closing argument when Brooks did not present evidence

other than his own testimony.  Doc. 1 at 6.  As supporting facts, Brooks alleges:

> Petitioner's alleged crime occurred on April 3, 2006; he was arrested on
> May 4, 2006.  All laws established on April 23, 2006, pertained to
> Petitioner.  The law on closing arguments was the Defendant is entitled to
> closing arguments with the sandwich if he or she does not present any
> evidence other than their own testimony.  However, the rule changed on
> May 3, 2007 that the State was required concluding closing arguments
> regardless if defendant has evidence or not.  The Petitioner's case vested
> on April 23, 2006.  Therefore, he was entitled to the concluding closing
> arguments under law.

*Id.* at 6-7.  Brooks indicates he raised this claim in state court in his "Initial Brief, Case

No. 1D07-3376, pgs. 12-16."  *Id.* at 7.

Respondent acknowledges that Brooks presented this claim in state court, but

points out that Brooks presented the claim in state court solely as a matter of state law.

Doc. 19 at 48-49.  Because errors of state law do not warrant federal habeas relief,

Respondent concludes this ground should be denied.  *Id.* at 49-50.

Brooks did raise a point in his direct appeal asserting the trial court erred by not

allowing him the final closing argument where he did not present any evidence other

than his own testimony.  Doc. 1 Ex. C at 12-16.  As Respondent indicates, however,

Brooks presented this argument solely as a matter of state law and did not cite any

federal authority, and thus any federal claim is not exhausted.  *See id.*  "[F]ederal

habeas corpus relief does not lie for errors of state law."  <u>Lewis v. Jeffers</u>, 497 U.S. 764,

780 (1990); *see* <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (explaining that errors

that do not infringe on defendant's constitutional rights provide no basis for federal

habeas corpus relief).  "A state's interpretation of its own laws or rules provides no basis

for federal habeas corpus relief, since no question of a constitutional nature is involved."

Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*,

McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).  *See also* Grice v. State,

967 So. 2d 957, 961 (Fla. 1st DCA 2007) (rejecting defendant's point on appeal that trial

court erred in denying him first and last closing arguments during trial in October 2006

and explaining such constitutes procedural matter and "while the legislature's repeal of

the portion of rule 3.250 relating to first and last closing arguments was effective, having

been passed by the necessary two-thirds majority of each house, its attempt to

substitute a different procedure was not" and "[a]s a result, one must look to the

common law," according to which State was entitled to first and last closing because it

had burden of proof).  This ground should be denied.

### Ground 5: Prosecutor Committed Fundamental Error in Closing Argument

In his fifth ground, Petitioner Brooks asserts the prosecutor committed

fundamental error during closing arguments.  Doc. 1 at 7.  As supporting facts, Brooks

alleges:

> During closing arguments, the prosecutor asked the jury to return a verdict
> that speaks the truth.  The comment was improper and could have
> resulted in a jury voting to convict Petitioner based on a belief that he was
> not telling the truth or on a belief that he committed the crime, even if the
> State had not met its burden of proof.  The prosecution also suggested
> that Petitioner had the burden to present evidence.  See [Exhibit C, Initial
> Brief, pgs. 17-19].  The prosecutor stated that people are prescribed
> marijuana cannabis to allow them to get better nutrition when they are ill
> with serious diseases.  This improper comment was made to mislead the

> jury and bolster the credibility of the alleged victim who was under the
> influence of marijuana at the time of the alleged incident.

*Id.*  Brooks indicates he presented this claim to the state court in his Initial Brief.  *Id.*

Respondent answers that the claim Brooks now presents is not the same as any

asserted in state court, is unexhausted, and procedurally defaulted.  Doc. 19 at 51-52,

55-56.

Brooks did raise a point in his direct appeal asserting the prosecutor committed

fundamental error during closing argument.  Doc. 1 Ex. C at 17-22.  The particular

prosecutor statements cited there were (1) "I ask you to return a verdict that speaks

th[e] truth" and (2) comments that allegedly improperly suggested Brooks had the

burden to present evidence showing what was in a shoulder bag depicted in the

surveillance video from Rickards High School.  *Id.*  Brooks now includes only the first of

these statements –  the prosecutor asking the jury to return a verdict that speaks the

truth – in this federal ground.  *See* Doc. 1 at 7.

Brooks raised an argument concerning the other statement he now challenges –

the prosecutor's comment about people being prescribed marijuana –  in the fifth claim

of his Rule 3.850 motion, in the context of an IAC argument.  *See* Doc. 19 Ex. P at 23.

The claim was not presented in state court as one alleging trial court error, however,

and thus was not exhausted and is now procedurally defaulted.

On the merits, the prosecutor's unobjected-to statement asking the jury to return

a verdict that speaks the truth does not warrant federal habeas relief.  In federal

habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the

trial with unfairness as to make the resulting conviction a denial of due process.'"

Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo,

416 U.S. 637 (1974)).  The comments must have been improper and have rendered the

trial fundamentally unfair.  United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir.

1991).

In this case, the prosecutor's closing reviewed the evidence and included the

following statements:

> Mr. Brooks did exactly what he's charged with doing in this case.
> Mr. Brooks claims his story that is flatly contradicted by all three of the
> other witnesses that we talked about earlier, disagrees with the other
> testimony in evidence.  Mr. Brooks' story doesn't agree with anybody.
> According to him he did not do what the girl said.  He did not say what the
> detective said.  He didn't even say what attempt – Assistant Principal
> Burch said.  They're all wrong.  If you accept his testimony, all three of the
> other witnesses are all wrong.  And his story, as I indicated to you, is
> contradicted by our own common sense reason and judgment, if you're
> truly afraid for someone else's health and safety, if you feel responsible as
> he claimed he did, then you take effected action to stop the problem, that's
> not what he did.  He did not act to protect the child.  He acted to take
> advantage of the child.  From the first time he talked to her about divorcing
> and to helping her friends skip school, to picking her up after she snuck
> out, he acted to take advantage of her, and ultimately committed the crime
> that he is charged with in this case.

> I ask you to do what your oath and the evidence and the law
> compel you to do, not because you take pleasure in it or enjoy it, because
> it's always an easy thing to do to hold somebody responsible or
> accountable for what they have done.  But Mr. Brooks violated the law.
> And on the evidence and the instructions you have gotten from the Court,
> and on your oath that you took at the outset of this trial, I ask you to render
> a verdict that speaks the truth from the evidence.  That Mr. Brooks is
> guilty, that he did what he's charged with doing.  He took a 14-year-old girl
> into the boys' locker room at 1:43 in the morning.  He put his mouth on her
> breasts.  He exposed himself and had him touch – had her touch him.  He
> tried to get her to do other things.  He did in this case exactly what he's
> charged with.  He didn't attempt it.  He didn't simply commit an unlawful

touching.  He certainly isn't innocent or not guilty.  He is guilty as charged
on the evidence.  I ask you to render a verdict that says exactly that.

Doc. 19 Ex. D at 303-05 (emphasis added).  Defense counsel then gave his closing,

which included a review of the evidence and the following reference to a verdict that

speaks the truth:

> You have got to decide if element three has been proven.  We
> know one and two are not really in conflict.  He's a teacher.  She's a
> student, the ages are what they are.  You have got to decide if three
> happened.  And to do that got, you've got take all this evidence, you have
> heard or what you haven't heard or what you have seen and what you
> haven't seen and make that decision.
>
> And ladies and gentlemen, that's not an easy decision.  And that is
> a very very important decision.  But it's a yours as citizens to make.
> I can just tell you what I think, and that's what I'm paid to do.  But in this
> case.  In the case – it's just – well, you make these decisions.
> I really don't think any of the lessers apply either.  You know, I really don't
> think they apply from a legal standpoint based on the evidence, because
> my client says he didn't do it.  He said he did, and you will look at the
> circumstances.  Those are compromised things, but I suggest they don't
> really.  If you're verdict is going to speak the truth, whatever that is – the
> plea of not guilty, reasonable doubt, and burden of proof concepts are
> really the constitutional protections that our forefathers gave us.  They're
> the same all over the country, whether you're in State Court or Federal
> Court.  They're the only thing that the citizen has, I would submit to you, to
> protect you when the government decides to go this way; okay?
>
> Okay.  The defendant has entered a plea of not guilty.  He testified.
> You must presume or believe he is innocent presumption stays with him
> until each and ever material element of the crime, that's the one, two, and
> three, have been proven beyond a reasonable doubt.  I emphasize these
> again, because that's the constitutional protections that bring us here.

*Id.* at 328-20 (emphasis added).  In rebuttal, the prosecutor focused on defense

counsel's statements and again argued without objection:

> Addressing, briefly, some of the things raised by counsel.  You
> know if you analyze what you just heard, it was don't believe her, don't

believe law enforcement, they did a bad job, and ignore the Assistant
Principal Burch and what he says, because it was probably – probably,
you know, I think, sort of what the defendants have known.  You're
basically being asked to disbelieve the child and then ignore the conflicts
between this defendant and the rest of the evidence and your own
common sense.

      . . . .

      But in the final analysis, it's not any one thing.  It's not any one
piece of evidence that demonstrates this defendant's guilty that he did
what he's charged with.  It's all of those pieces and all of those facts
together.  <u>This man, on the evidence, on the law, is guilty and I ask you to
return a verdict that speaks that truth</u>.  And that's all I have got to say.

      Thank you.

*Id.* at 334-38 (emphasis added).  Thereafter, the trial court read the final instructions to

the jury.  *Id.* at 339-42; *see id.* at 278-91 (instructions read to jury prior to closing

arguments).

As explained above, defense counsel did not object to these comments and,

therefore, a point on appeal would be affirmed absent the existence of fundamental

error.  *See* <u>Morton v. State</u>, 789 So. 2d 324 (Fla. 2001) ("As a general rule, 'failing to

raise a contemporaneous objection when improper closing argument comments are

made waives any claim concerning such comments for appellate review.' . . . The

exception to this general rule is where the unobjected-to comments rise to the level of

fundamental error, which this Court has defined as 'error that 'reaches down into the

validity of the trial itself to the extent that a verdict of guilty or jury recommendation of

death could not have been obtained without the assistance of the alleged error.'"

(quoting <u>Brooks v. State</u>, 762 So. 2d 872, 898-99 (Fla. 2000))).  In the Answer Brief, the

State argued the comments did not constitute fundamental error.  Doc. 19 Ex. N at 11-

12.  The First DCA affirmed per curiam with no written opinion.

The prosecutor's unobjected-to comments do not appear improper as they

appropriately ask the jury to determine the credibility of the witnesses' testimony,

evaluate the evidence presented, and determine, as the finder of fact, what happened in

this case.  *See, e.g.*, <u>Dunlap v. State</u>, 21 So. 3d 873, 877 (Fla. 4th DCA 2009) (holding

trial court did not abuse discretion in denying motion for mistrial where prosecutor asked

the jury to "make a collective decision on what the truth is" and explaining, "It was not

improper to utter the word 'truth' in the context of the jury's role as factfinder, particularly

where, as here, the comment was immediately followed by a clear explanation of the

State's burden of proof in the defense opening statement, and the jury was properly

instructed on the State's burden of proof by the judge at the conclusion of the case.");

<u>Steurer v. Crews</u>, No. 4:10cv383-RH/EMT, 2013 WL 4096120 at *21-22 (N.D. Fla. Aug.

11, 2013) (order adopting report and recommendation which, among other grounds,

addressed claim asserting IAC for failing to object to prosecutor's allegedly improper

closing argument that asked jury "to render a verdict that finds him guilty as charged . . .

. Render a verdict that speaks the truth," and explained counsel was not deficient for

failing to object because the comments were not improper:  "[T]he prosecutor's

comments in the instant case properly commented on the jury's obligation to determine

the credibility of the witnesses' testimony and did not suggest any improper basis for

reaching a verdict.  There was no suggestion that the jurors' determination of who was

telling the truth should be the sole basis for the jury's verdict; instead the prosecutor

asked the jury to find Petitioner guilty 'because the evidence and the law and your common sense require it.'").  *Cf.* Northard v. State, 675 So. 2d 652, 653 (Fla. 4th DCA 1996) (reversing and remanding for new trial where prosecutor's objected-to comments in opening statement and closing argument that jury "deliberate and come back with a verdict, a verdict that simply reflects the truth; that the defendant in this case was caught red-handed" and "[i]f you believe the defendant's events the police cannot possibly be telling you the truth . . . in order to find him not guilty you're going to have to believe that the defendant was telling the truth and the officer was lying" were "impermissible because [they] improperly asked the jury to determine who was lying as the test for deciding if appellant was not guilty" and invited "the jury 'to convict the defendant for a reason other than his guilt of the crimes charged'" (quoting Bass v. State, 547 So. 2d 680, 682 (Fla. 1st DCA 1989))).  Further, even if improper, the prosecutor's comments here were not so egregious as to have rendered the proceeding fundamentally unfair.  *See* Darden, 477 U.S. at 181.  *See also* Griffin v. State, 866 So. 2d 1, 16 (Fla. 2003) (explaining that, in closing argument, prosecutor may "review the evidence and . . . explicate those inferences which may reasonably be drawn from the evidence").

Petitioner Brooks has not shown the state courts' rulings rejecting this ground resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## <u>Ground (14)</u>: Denial of Counsel for Rule 3.850 Evidentiary Hearing

In this ground, Petitioner Brooks asserts his federal and state constitutional right

"for due process and equal protection were violated when denied counsel for evidentiary

hearing."  Doc. 1 at 12.  In support, Brooks alleges the following facts:

> The Circuit Court, Terry P. Lewis ordered an Evidentiary Hearing for
> Petitioner's Motion for Post Conviction Relief pursuant to Rule 3.850. [T]he
> Honorable Lewis explained that Petitioner's motion was simple, straight
> forward, and factual nature; therefore, he declined to appoint counsel for
> the hearing.  However, the Court explained that if the issues became
> legally complex, the finding may be revisited. [Exhibit F, Order setting
> Evidentiary Hearing].  Petitioner's claims became adversarial, complex
> and required substantial legal research in which State witnesses needed
> to be subpoena[ed].  The Petitioner was asked questions that only an
> attorney of law could answer. [Exhibit D, Evidentiary Hearing, pp. 38, lines
> 7-23].  The State also lead Petitioner's Trial Counsel and Petitioner did not
> know to object. [Exhibit D, Evidentiary Hearing, pg. 48].

*Id*.  Brooks indicates he raised this ground in state court, in his Initial Brief in the appeal

from the denial of his Rule 3.850 motion.  *Id.*

As Respondent indicates in its Answer, the U.S. Supreme Court has held that

"[t]here is no constitutional right to an attorney in state post-conviction proceedings."

<u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991); *see, e.g.*, <u>Chavez v. Sec'y, Fla. Dep't</u>

<u>of Corr.</u>, 742 F.3d 940, 944 (11th Cir. 2014) (explaining that "[t]he Supreme Court has

long held that there is no constitutional right to counsel in post-conviction proceedings,

even in capital cases").  *See* Doc. 19 at 132.  Accordingly, the state post-conviction

court's denial of Brooks' request for appointment of counsel for the Rule 3.850

evidentiary hearing was not contrary to or an unreasonable application of clearly

established federal law as determined by the U.S. Supreme Court.  This ground should

be denied.

### Ground (17): State Court's Denial of Rule 3.850 Motion

In this ground, Brooks asserts his federal and state constitutional rights "for due

process and equal protection were violated when the Circuit Court did not grant

Petitioner's 3.850 motion due to the State being time-barred and in non-compliance to

the Court's Show Cause Order."  Doc. 1 at 13.  In support, Brooks alleges the following

facts:

> Circuit Judge Terry P. Lewis ordered an Order to Show Cause on August
> 4, 2009.  At the time, the State was ordered to show cause within 45 days
> of the date of the order, August 4, 2009. [Exhibit FA].  On October 2, 2009,
> the Petitioner filed a Motion of Default. [Exhibit FB].  The motion was
> based on the State not complying to the Court's Show Cause Order or
> requesting an extension of time.  The State responded six months later.
> [Exhibit B, Initial 3.850 Brief, pgs. 6-7].

*Id.*  Brooks indicates he raised this claim in state court in his Initial Brief filed in the

appeal from the denial of his Rule 3.850 motion.  *Id.*

As Respondent indicates in the Answer, this ground does not present a claim for

federal habeas relief as it asserts only a claim of a defect in a state collateral

proceeding.  Doc. 19 at 151.  *See, e.g.,* Carroll v. Sec'y, DOC, 574 F.3d 1354, (11th Cir.

2009) ("This Court has repeatedly held defects in state collateral proceedings do not

provide a basis for habeas relief."); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir.

2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's

conviction and sentence, an alleged defect in a collateral proceeding does not state a

basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987)

(holding that state court's failure to conduct evidentiary hearing on Rule 3.850 motion or attach relevant portions of record cannot form basis for habeas relief because any such error does not "undermine[] the validity of petitioner's conviction" and is "unrelated to the cause of petitioner's detention").  Therefore, this ground should be denied.

### Remaining IAC Claims

### <u>Ground (6)</u>: IAC – Failure to Present Victim's Police Interrogation Video

In this ground, Petitioner Brooks asserts his federal and state constitutional rights to due process and an impartial trial "were violated when the alleged victim's police interrogation video deposition was not shown to the jury and used as substantive evidence."  Doc. 1 at 7.  As supporting facts, Brooks alleges:

> Petitioner's entire case was based on the word of the alleged victim against his.  The alleged victim's initial interview in which she clarified that no misconduct occurred was claimed to not have been recorded.  However, her second interview was recorded when she gave inconsistent statements and was coerced by a Leon County Sheriff's detective.  The alleged victim clarified that she was eating her McDonald's food and almost dropped it when Petitioner allegedly touched her right breast, but, State's Exhibit A evidence showed that the alleged victim never had McDonald's food entering or exiting Petitioner's office.  The police interrogation video deposition dictated corruption.  [Trial Exhibits, pg. 73-79].

*Id.*  Brooks indicates he raised this claim in state court as Issue 3 in his Rule 3.850 motion.  *Id.* at 7-8.

Respondent answers that Brooks raised this claim in state court as one alleging IAC, and Respondent addresses the claim accordingly.  Doc. 19 at 62-63.  Respondent argues that the only discussion in the trial court transcript concerning the videotape arose when defense counsel mentioned it in his opening statement, the prosecutor

objected, the trial court sustained the objection, and then fashioned a curative

instruction.  *Id.* at 63-65.  Respondent points out that defense counsel testified about

this during the Rule 3.850 evidentiary hearing and explained that he did not want to

introduce the tape except as a last resort and made a tactical decision not to use it.  *Id.*

at 65-67.

Brooks did raise this ground in Issue 3 of his Rule 3.850 motion filed in state

court as one alleging IAC of trial counsel.  *See* Doc. 19 Ex. P at 20-22.  At the

conclusion of the evidentiary hearing, the state post-conviction court denied the claim

and made the following findings:

> There were several categories of impeachment . . . .  Frankly, from
> review of the transcript, Mr. Collins did significantly impeach the victim,
> particularly as to the original statement in which [s]he denied that anything
> had happened as impeachment by the probable cause.  The probable
> cause is not a statement of the victim.  I'm not sure how the victim could
> be impeached with that, anyway.
>
> As to the deposition, it's been explained that you try to start trying
> to get into minute inconsistencies, it just takes away from the primary
> impeachment that the victim's original statement was to deny that anything
> occurred.

Doc. 19 Ex. U at 76-77.  These rulings, affirmed on appeal without opinion, are entitled

to AEDPA deference and review is limited to the record before the state court.  *See* 28

U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright v.

Sec'y of Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002).  As explained below, the

record supports the state court findings.

Specifically, at the evidentiary hearing, Brooks' trial counsel, David Collins,

testified.  Doc. 19 Ex. U at 44-70.  Regarding this ground, Mr. Collins testified:

Q In this case, did you attempt or did you actually impeach the victim with discrepancies in her previous statements?

A Well, whether I impeached her or not was obviously a decision the jury had to make, as to her credibility.  Now, I attempted to impeach her the best that I could, given the fact that she did admit under cross examination, if the record actually reflects this, that she had in fact told an inconsistent statement and had denied in her initial interview that Mr. Brooks had done anything improper toward her.

Q Did you have an opportunity to review the CP tape in this case?

A Absolutely, absolutely.

Q Did you want to introduce that CPT tape?

A Only, as a last resort.  If in fact that somehow she had denied initially her prior inconsistent statement – because the tape did include a demeanor and other conversations between her and her mother that I did not think would have helped Mr. Brooks, that in fact it was better that she admitted under oath that she had given the inconsistent statement.  And, we left it at that.

Q Was the decision to introduce or not introduce the CPT tape a tactical one?

A Yes.  And, when I say that it wasn't just tactical one, it was also – I believe there was a real disagreement with the Judge as to whether I could use it, or not.  And I think we addressed that issue and I let the record speak to itself.

*Id.* at 59-60.

The record thus supports the state post-conviction trial court's denial of this claim given that defense counsel made a strategic decision not to use the videotape.

Defense counsel's strategic choices generally do not constitute deficient performance.

*See* Henry v. State, 948 So. 2d 609 (Fla. 2006); *see also, e.g.*, Waters v. Thomas, 46

F.3d 1506, 1518-19 (11th Cir. 1995) (en banc) ("We cannot, and will not, second guess

such [strategic] decisions" that "trial counsel are called upon to make."); <u>Dingle v. Sec'y</u>

<u>for Dep't of Corr.</u>, 480 F.3d 1092, 1099 ("[C]onsidering all the circumstances, we give

great deference to choices dictated by reasonable strategy.").

      Based on the foregoing, Brooks has not shown the state courts' rulings rejecting

this claim resulted in a decision that was either (1) contrary to, or involved an

unreasonable application of, clearly established U.S. Supreme Court precedent, or (2)

based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be

denied.

      <u>Ground (7)</u>: IAC – Failure to Use Victim's Recantation/Judgment of Acquittal

      In this ground, Petitioner Brooks asserts his federal and state constitutional rights

"for equal protection, due process and effective counsel were violated based on a

manifest injustice because of the alleged victim recanting her initial statements, making

inconsistent statements and being under the influence of drugs at the time of the

alleged incident."  Doc. 1 at 8.  As supporting facts, Brooks alleges:

> The alleged victim was questioned initially at the Leon County Sheriff's
> Department concerning her and Petitioner being on video surveillance at
> Rickards High School on April 23, 2006.  The alleged victim clarified that
> no misconduct occurred and went home with her mother. [Trial Exhibits,
> pg. 54-56].  However, she and her mother returned hours later with a new
> statement that Petitioner had touched her right breast with his bare hand.
> She advised that she was eating her food and grabbed her bag, but
> admitted to be untruthful. [Trial Exhibits, pgs. 49 and 68].  With these
> inconsistencies, the alleged victim was under the influence of drugs at the
> time of the alleged incident. [Trial Exhibits, pgs. 45, 46, 50, 51 & 52]
> [Exhibit D, Evidentiary Hearing, pg. 42].  The Petitioner is African
> American and the alleged victim was a white female student. . . .  The

alleged victim also made two different statements about kissing Petitioner on the lips. [Trial Exhibits, pgs. 70-72].

*Id.*  Brooks indicates he raised this claim in state court.  *Id.*  Respondent answers that, given the way Brooks raised this claim in state court, the State will presume the claim is one alleging IAC and addresses the claim accordingly.  Doc. 19 at 75-81.

Brooks did raise this ground in Issue 4 of his Rule 3.850 motion filed in state court as one alleging IAC of trial counsel for failure to request a judgment of acquittal: "[T]rial counsel was ineffective for not requesting a judgment of acquittal based on alleged victim being on drugs, making inconsistent statements, and recanting initial statement."  Doc. 19 Ex. P at 23.  During the Rule 3.850 evidentiary hearing, the following exchange occurred:

> THE DEFENDANT: Okay.  Ground Number 4.  Trial counsel was ineffective for not requesting a judgment of acquittal, based on the alleged victim being on drugs at the time of the alleged incident, making inconsistent statements and recanting her initial statement.
>
> Your Honor, in a credibility case, Mr. Collins did mention the fact that the alleged victim was on drugs; however, he never did anything to properly preserve this issue for appellate review.  I was furious with my appellate counsel . . . for not raising that the alleged victim was on drugs – meaning that this was a credibility case.  The alleged victim clearly states, Your Honor, in Exhibit –
>
> THE COURT: Well, let me cut you off Mr. Brooks.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Impeachment considerations are not a proper consideration for judgment of acquittal, so move on to your next grounds.

Doc. 19 Ex. U at 23-25.  Brooks then proceed to his fifth ground.  *Id.* at 25.  At the conclusion of the hearing, in denying the claim, the state post-conviction trial court found:

> I think Mr. Brooks acknowledged . . . that he understood that the JOA is not legally appropriate, based upon inconsistencies and testimony.  That's simply a jury question.

*Id.* at 77.  These rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255.  As explained below, the record supports the state court findings.

In particular, during the trial, the prosecutor questioned the victim, B.B., about the incident at Rickards High School that resulted in the charge against Brooks in this case. Doc. 19 Ex. D at 123-31.  B.B. also testified that when the police first came to talk with her, she did not admit to being at the school but, after she went home and talked with her mother, she "just started crying and telling her everything" and they then went back and gave a statement to the police.  *Id.* at 133-35.  On cross, defense counsel questioned B.B. about her use of marijuana when the incident occurred, and B.B. confirmed that she had smoked marijuana that night.  *Id.* at 141, 144.   Defense counsel also questioned B.B. about her inconsistent statements.  *Id.* at 145-54.  At the conclusion of the State's case, defense counsel made a JOA motion, which the trial court denied:

> MR. COLLINS:  Briefly, Your Honor, at this time knowing that the standard of proof is basically whether or not the State has put on a prima facie case

or not, the argument would center on whether or not they put on a prima
facie case, and whether or not a jury question exists.

  At this time I while acknowledging that there have been basic
statements made in some context that would satisfy the prima facie case
element, that our criticism and our motion is based on the fact that
because of the numerous inconsistent statements, her statements aren't
believable.  And we would ask for a motion for judgment of acquittal on
that, and further, that there has actually been no police investigation,
whatsoever to support or corroborate what she said.

THE COURT: I think the evidence is such of a state that it's a jury issue
that the prima facie case has been made by the State.  So, therefore, I'm
compelled by the law to deny the motion for judgment of acquittal.

*Id.* at 179-80.  Thus, contrary to Brooks' assertions, defense counsel did question the

victim about her inconsistent statements and use of marijuana, and, further, defense

counsel moved for JOA, citing those inconsistencies.  The trial court did not err in

denying the JOA motion.  *See, e.g.*, <u>Donaldson v. State</u>, 722 So. 2d 177, 182 (Fla.

1998) ("The fact that the evidence is contradictory does not warrant a judgment of

acquittal since the weight of the evidence and the witnesses' credibility are questions

solely for the jury."); <u>State v. Nichols</u>, 892 So. 2d 1221, 1228 (Fla. 1st DCA 2005) ("The

witnesses credibility and the weight of the evidence are questions for the jury.").

  Brooks has not shown the state courts' rulings rejecting this claim resulted in a

decision that was either (1) contrary to, or involved an unreasonable application of,

clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground (8)</u>: IAC - Agreed to State's Motion to Continue Trial

In this ground, Brooks asserts his trial counsel provided ineffective assistance by agreeing "to a fraudulent motion to continue trial by the State."  Doc. 1 at 8.  Brooks explains that, prior to trial, the alleged victim ran away and "[a]s a result, the State used a fraudulent motion to delay trial."  *Id.* at 9.  Brooks indicates he raised this claim in state court and it was denied by the state post-conviction trial court at the conclusion of the evidentiary hearing.  *Id.*; *see* Doc. 19 Ex. U at 76.

Respondent answers that Brooks appears to have raised this in state court as part of Ground 2 in his Rule 3.850 motion.  Doc. 19 at 82-83; *see* Doc. 19 Ex. P at 18-19.  Brooks and his trial counsel testified concerning this issue during the evidentiary hearing, and the state post-conviction trial court denied the claim on the record at the conclusion of the hearing.  Doc. 19 at 83-84; *see* Doc. 19 Ex. U at 17-19, 56-57, 76.  Respondent explains, therefore, the claim was addressed on the merits and Brooks cannot establish the denial of relief was contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  Doc. 19 at 84-87.

As the parties acknowledge, the state post-conviction trial court denied this claim on the merits at the conclusion of the evidentiary hearing:

> The next is agreeing to a motion to continue.  I haven't gone back and read exactly what may have been stated in a motion to continue, but I certainly do not find that it is below the standards of an attorney to agree to a reasonable request from the State for a continuance, assuming for the sake of argument there was a continuance, there was no speedy trial issue and the defendant was not prejudiced whether the trial occurred in March or April, when it actually started.  I don't find any conceivable basis for prejudice on that.  To suggest that they should have rushed to trial because the victim is missing, frankly is absurd.  If the State was missing their victim, it was certainly a basis to obtain a continuance.

Doc. 19 Ex. U at 76.  These rulings, affirmed on appeal without opinion, are entitled to

AEDPA deference and review is limited to the record before the state court.  *See* 28

U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278

F.3d at 1255.  As explained below, the record supports the state court findings.

Specifically, at the evidentiary hearing, Brooks' trial counsel, Mr. Collins, testified

regarding this ground:

> Q Do you remember him [Mr. Brooks] coming to you and telling you that victim had gone missing and this thing about a picture at a convenience store?
>
> A I'm not going to say he never told me that.  I don't have any memory of that.  I'm not going to say he didn't tell me that.  I'll assume that he did tell me that, but I don't remember.
>
> Q Have you had witnesses missing before trial, just to have the State find them at the eve of trial?
>
> A Well, if it's your burden, being the State – and one thing that he said and I will have to say did sound like something I would have said:
>
> > If the chief witness for the State is missing and we're getting close to trial, I don't care if that witness is missing, let him stay missing.  I'm not going to do anything to obstruct the State, but I'm not going to do anything to go find the witness, either.  So, I don't know if that answers your question.
>
> Q At any time did you agree to a continuance in this case to detriment, purposely, to the determent of your case?
>
> A No, because you can't have it both ways.  If we have in good faith – asked for continuances and speedy trial is not longer an issue, and the State needs a continuance, especially Mr. Wade [the prosecutor in this case], unless I have a faith basis to object, I'm not going to object.

Doc. 19 Ex. U at 56-57.  Because any speedy trial issue had already been waived given

the continuances previously requested by and granted to defense counsel, defense

counsel did not perform deficiently by not objecting to the State's request for a

continuance.  *See* Doc. 18 Ex. NN (orders and defense motions for continuance).  As

the state post-conviction trial court found, if the State's witness/victim was missing, that

was a proper basis for a continuance.  *See, e.g.*, <u>Geralds v. State</u>, 674 So. 2d 96, 99

(Fla. 1996) (explaining a motion for continuance rests within sound discretion of trial

judge); Fla. R. Crim. P. 3.190(f)(2) (providing "the court may grant a continuance, in its

discretion for good cause shown").

Petitioner Brooks has not shown the state courts' rulings rejecting this ground

resulted in a decision that was either (1) contrary to, or involved an unreasonable

application of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground (12): IAC - Failure to Use Vital Witnesses

In this ground, Petitioner Brooks asserts his trial counsel did not use "vital

witnesses."  Doc. 1 at 11.  Brooks alleges the following supporting facts:

> The State's entire case was based on alleged victim's words against
> Petitioner.  The Petitioner did not have one witness in his case; the
> Petitioner was a former United States Marine, a teacher and coach and
> could have had many character witnesses.  However, Petitioner was
> unskilled in science of law and was totally dependent of Counsel.  Trial
> Counsel could have used a student witness who was with the Petitioner
> and alleged victim one day after alleged crime.

*Id.*  Brooks indicates he raised this claim in his state court Rule 3.850 motion and as

Ground 8 in his Initial Brief in his Rule 3.850 appeal.  *Id.*

Respondent answers that this ground is ambiguous because Brooks has not specifically indicated any witnesses trial counsel should have used.  Doc. 19 at 110. Respondent indicates this claim "has its origins" in Issue 7 of Brooks' Rule 3.850 motion, in which Brooks asserted trial counsel should have interviewed his step-daughter, Robynn Johnson, and the victim's friend "Dreci," whose testimony would have impeached the victim's, and "Dean Ricky Artley," regarding the video surveillance.  *Id.* at 110-11.  Respondent explains the state court denied Brooks' claim after the evidentiary hearing, the First DCA affirmed the denial, and Brooks has not shown the state court's ruling was contrary to or an unreasonable application of Strickland or that it rested upon an unreasonable determination of the facts.  *Id.* at 111-17.

To the extent Brooks argues in this ground that his attorney should have called additional witnesses, this ground does appear similar to Issue 7 raised in Brooks' Rule 3.850 motion, in which Brooks asserted trial counsel was ineffective for not interviewing witnesses and mentioned his step-daughter, Robynn Johnson, and Dreci.  Doc. 19 Ex. P at 31-32; *see id.* Ex. X at 51-53 (Point 8 in Initial Brief in appeal from denial of Rule 3.850 motion).  The state post-conviction trial court denied this claim after the evidentiary hearing, making the following findings:

> Failure to interview a witness: Mr. Collins acknowledged that there was someone named Robin mentioned in his conversations with Mr. Brooks.  But, it certainly do not seem to be poor strategy to try to distance yourself from – school teacher taking young girls around and providing them marijuana.
>
> Under circumstances independent of this case, certainly the kind of thing a jury would dimly view, particularly when the impeachment is relatively of little significance that something supposedly happened the

day after the event.  I don't find any prejudice has been established there, I find it was a strategic decision.  I think Mr. Collins explained the character witnesses, he did what he could to interview the character witnesses and they didn't want to be involved.  Hard to find Mr. Collins at fault for that situation.

I would also note that although Mr. Collins didn't acknowledge it, character witnesses can be quite problematic under – they can be asked questions about have you heard various things.  They're a real potential time bomb for any attorney.  But, anyway, as stated that he didn't have character witnesses to testify.

Doc. 19 Ex. U at 77-78.  These rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255.  As explained below, the record supports the state court findings.

Specifically, at the evidentiary hearing, Brooks' trial counsel, Mr. Collins, testified regarding this ground:

Q Did you ever hear the name Robin Johnson, during the representation of the defendant?

A I might very well have.  I do know there were notes that Mr. Brooks gave me that had a name Robin on them.  I have reviewed the file.  And it certainly was in the context that Mr. Brooks testified to.  There was a Robin that was a student of his that was in a vehicle with him and with B.B., the alleged victim in this case.  Now beyond that, I can't really say, but I do remember a name Robin, yes, sir.

Q Do you remember him asking for her to be called at his trial?

A No, I don't recall if he did, or not.  If he had strongly wanted her to testify, certainly we could have called her.  She was present in the courtroom, if I under[stand] Mr. Brooks correctly.  Now, for me to say that I remember her being there I don't even know if I remember that.  But if he strongly wanted her – but I don't know why we would have called her, even if we had.

Q Now, my next question.  What purpose would you have call her, based on the alleged statements as far as your defense that you had structured in this case?

A I probably wouldn't have called her unless there was something more germane than what he had discussed with me.  And the reason being is I wanted to distance himself from the relationship with these girls.  There were allegations that he was providing them marijuana and that they were riding around in the car, in the vehicles, with marijuana that he had provided.  So I didn't want any of that to get into trial.  And the farther we got away from B.B. and into relationships with more of these young girls, the more we were getting into that area.  And I just didn't see where that door needed to be opened.

Q Character witnesses – on your experience is it permissible for a defendant to call a character witness who you do not have germane evidence concerning a case?

A Well, it might be.  But in this case, I do feel that since it was a credibility contest that character witnesses could be germane.  As you're probably aware, you can only ask a character witness if they know of their reputation for truthfulness in the community.  And it's sort of limited in that regard.  And certainly, if it's one person versus another, as this case was, character witnesses could be very germane.

    But the problem was I called folks that he asked me to call as possible character witnesses.  I don't know if the court file reflects it.  I probably filed a witness list – one that included Dr. Hightower, who is from Wacissa originally, out where I live.  The problem was Dr. Hightower told me under no circumstances would he come and testify on behalf of Mr. Brooks, because of the allegations against him.  And therefore, I wasn't able to get him here.  He was quite concerned with the conduct that Mr. Brooks was alleged to have committed.

Q Was there any other witnesses that Mr. Brooks asked you to call that you chose not to, that you can recall or see in your file?

A I don't recall if there were.

Doc. 19 Ex. U at 62-64.

The record thus supports the state post-conviction trial court's finding that defense counsel made a strategic decision not to call Ms. Johnson or the character witnesses.  Defense counsel's strategic choices generally do not constitute deficient performance.  *See* Henry v. State, 948 So. 2d 609 (Fla. 2006); *see also, e.g.*, Waters, 46 F.3d at 1518-19; Dingle, 480 F.3d at 1099.

Based on the foregoing, Brooks has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground (13): IAC – Failure to Impeach Witnesses

In this ground, Brooks argues his trial attorney rendered ineffective assistance by failing to impeach witnesses during the trial. Doc. 1 at 11.  In his supporting facts, Brooks focuses on the victim and Detective James Tyson:

> The Petitioner's entire case was based on the words of the alleged victim against Petitioner.  At Petitioner's trial, the alleged victim clarified that she and Petitioner had kissed in the mouth. [Trial Exhibits, pgs. 70, and 72]. However, in deposition the alleged victim explained that she never kissed Petitioner on the mouth. [Trial Exhibits, pg. 71].  The alleged victim was never impeached.  The alleged victim testified that she smoked marijuana with her mother's friends' sister. [Trial Exhibits, pg. 45; 46, lines 1-9; 50; 51, lines 1-11] [Trial Exhibits, pg. 54-56].  The Petitioner's Trial Counsel never properly impeached the alleged victim for being under the influence of drugs at the time of alleged incident.  Detective James Tyson clarified that Petitioner advised him that he and the alleged victim walked into a motel lobby on alleged crime night. [Trial Exhibits, pg. 55, last paragraph]. However, Detective explained that no one investigated the alleged motel

for surveillance nor recorded Petitioner's interview. [Trial Exhibits, pg. 62-67].  The Petitioner and alleged victim herself testified that they never walked into a motel lobby together on April 23, 2006. [Trial Exhibits, pg. 66, lines 1-9].  Detective Tyson should have been impeached.  Although sexual intercourse was never a factor in Petitioner' case, Detective Tyson clarified that Petitioner failed a computer voice stress analysis test based on him and the alleged victim having sex. [Trial Exhibits, pg. 55, second paragraph].  Petitioner was arrested based only on his race as a black man, and he waived his Miranda rights to fully comply. [Trial Exhibits, pg. 95].  The investigators went through great lengths for the rights waiver, but never recorded Petitioner's interview allegedly. [Trial Exhibits, pg. 61, lines 21-23].

*Id.* Brooks indicates he raised this claim in state court in his Rule 3.850 proceedings and as Ground 4 in his Rule 3.850 appeal.  *Id.* at 11-12.

As Respondent asserts, this ground as now presented does not correspond to any of the claims presented in Brooks' Rule 3.850 motion.  *See* Doc. 19 at 119; *see also* Doc. 19 Ex. P.  A review of the transcript of the evidentiary hearing reflects Brooks presented arguments during that hearing concerning his trial attorney's failure to impeach witnesses.  *See id.* Ex. U at 19-24.  At the conclusion of the hearing, the state post-conviction trial court denied the claims, making the following findings:

There were several categories of impeachment – that would be four, five and six, impeachment by the deposition.  Impeachment with the probable cause and statement, impeachment by the original statement.  Frankly, from review of the transcript, Mr. Collins did significantly impeach the victim, particularly as to the original statement in which he denied that anything had happened as impeachment by the probable cause.  The probable cause is not a statement of the victim.  I'm not sure how the victim could be impeached with that, anyway.

As to the deposition, it's been explained that you try to start trying to get into minute inconsistencies, it just takes away from the primary impeachment that the victim's original statement was to deny that anything occurred.  I think Mr. Brooks acknowledged in the seventh issue that he

> understood that the JOA is not legally appropriate, based upon
> inconsistencies and testimony.  That's simply a jury question.

*Id.* at 76-77.  These rulings, affirmed on appeal without opinion, are entitled to AEDPA

deference and review is limited to the record before the state court.  *See* 28 U.S.C.

§ 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of

Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).  As explained below, the record

supports the state court findings.

Specifically, Brooks' trial counsel, Mr. Collins, testified at the evidentiary hearing

concerning the victim's deposition and impeachment issues:

> Q Talking about the deposition of the victim, do you remember
> inconsistencies in the victim's account as to how she was kissed by the
> defendant?
>
> A As you asked this question, as Mr. Brooks posed it today, I don't
> remember.  I'm not doubting.  Let's assume he is correct.  All I could think
> of is I probably would not bring out such a subtle discrepancy.
>
> In my opinion, having represented numerous folks accused of sex
> crimes over the years, people – defendants have a tendency to want to
> describe little nuances.  Oh, she – you know an example would be oh, she
> says I touched her on the breast and I really just touched her on the
> shoulder.
>
> Those kind of distinctions seem to me to lose credibility with the
> jury.  And generally, the answer I never did it at all would be more forceful
> with the jury, bringing up these little inconsistencies, I don't think it's a
> good idea.  And that is a tactical decision that I make.
>
> Q Would you agree that spending a lot of time talking about I'm kissing her
> this way instead of that way, when you're talking about a child sex case,
> might aggravate the situation?
>
> A That's exactly what I was trying to explain.  Trying to make a big deal
> out of those little nuances only, in my opinion, tend to lend credibility to the
> alleged victim.

Q Do you remember reading the probable cause, or did you read probable cause, in the reports of this case?

A Oh, I'm certain I read the probable cause in all reports, compared them with depositions and made notes.  That's the way I do things.  So, yes.

Q Is it, based on your training and experience, unusual for greater detail to come out during direct and cross examination of a witness than as reported in a probable cause affidavit?

A You know, when you say in my experience, it's a long experience with a lot of different victims.  It could happen; it's not unusual.  How often or many times did it happen I don't know; but it's not unusual.

Q Based on your experience, could you have cross examined – was the victim the person who wrote the probable cause affidavit?

A No, no.  The victim generally doesn't write the probable cause affidavit.  It's usually statements that are attributed to victims by law enforcement officers.

Q In this case, did you attempt or did you actually impeach the victim with discrepancies in her previous statements?

A Well, whether I impeached her or not was obviously a decision the jury had to make, as to her credibility.  Now, I attempted to impeach her the best that I could, given the fact that she did admit under cross examination, if the record actually reflects this, that she had in fact told an inconsistent statement and had denied in her initial interview that Mr. Brooks had done anything improper toward her.

Doc. 19 Ex. U at 57-59.  Thus, concerning the claim of ineffective assistance for the alleged failure to impeach the victim, the record supports the state post-conviction trial court's findings indicating that defense counsel's actions reflected a reasonable, strategic decision.  *See, e.g.*, Waters, 46 F.3d at 1518-19; Dingle, 480 F.3d at 1099.

Brooks also argues in this ground that defense counsel rendered ineffective assistance by not impeaching Detective Tyson regarding his statement concerning the

computer voice stress analysis (CVSA), specifically that Brooks had "failed a computer voice stress analysis test based on him and the alleged victim having sex."  Doc. 1 at 11.  As Respondent points out, Brooks raised this issue in his Rule 3.850 motion and it was addressed during the evidentiary hearing in the context of alleged prosecutorial misconduct.  Doc. 19 at 130.  At the hearing, Brooks testified:

> Q Going to the next section: Failed to object to alleged prosecutorial misconduct.
>
> Your statement today is that the CVSA was used to influence the Judge, not the jury.  Right?
>
> A Correct.  So I have no problem with him being ineffective in that manner.

Doc. 19 Ex. U at 38.  At the conclusion of the evidentiary hearing, the court ruled:

> Number 8, there was some testimony about voice stress analysis.  I think ultimately, Mr. Brooks admitted that that testimony did not go before the jury, so there was not ineffective assistance of counsel, nor was there prejudice.

*Id.* at 77.  The record supports the court's rulings.  In addition to Brooks' own testimony quoted above, the trial transcript contains the prosecutor's statement before the trial and outside the presence of the jury:

> MR. WADE: Judge, there was one other issue.  And I think we may have addressed it on the record earlier.  Counsel raised a concern, I don't know if it was on the record or in chambers conference, regarding the giving of the voice-stress analysis test.  The voice lie detector test and the fact that the officer believed that the defendant registered deception on a couple questions.  We do not intend, as I think we have already said, but just to make the record clear, we do not intend to introduce evidence that he flunked the CVSA test.

Doc. 19 Ex. D at 12-13, 57.

Brooks has not shown the state courts' ruling resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2); *see, e.g.*, Waters, 46 F.3d at 1518-19; Dingle, 480 F.3d at 1099.  This ground should be denied.

### Ground (15): IAC – Failure to Investigate

In this ground, Petitioner Brooks asserts his trial counsel rendered ineffective assistance in failing to investigate his case.  Doc. 1 at 12.  Brooks alleges the following supporting facts:

> The alleged crime occurred on April 23, 2006 and both the Petitioner and alleged victim were interviewed at the Leon County Sheriff's Department on May 3, 2006. [T]he alleged victim stated that she and the Petitioner drove to McDonald's on South Monroe Street prior to going to Rickards High School.  However, Petitioner clarified that he drove to his office to retrieve money and then drove alleged victim to McDonald's on North Monroe Street. [Trial Exhibits, pg. 54-56].  The alleged victim admitted that she was eating her McDonald's food in Petitioner's office.  Trial Counsel never requested video surveillance from either McDonalds.  Any physical evidence could have changed the outcome of Petitioner's trial.  Because, the alleged victim recanted her initial statement, Trial Counsel failed to investigate alleged victim's mother who is an ex-convict and may have enticed her daughter to change her statement for a law suit against the Leon County School Board.  It is noteworthy to know that Dana Mabrey, the alleged victim's mother sued the School Board of Leon County.

*Id*.  Brooks indicates he raised this claim in state court as Issue 2 in his Rule 3.850 motion "as Trial Counsel was ineffective when he advised Defendant to commit perjury and avoid investigating aspects of his case."  *Id*. at 12-13.

As Respondent explains in its answer, Brooks' federal habeas ground narrows the claim he raised in state court because the federal claim focuses on defense counsel's alleged failure to obtain surveillance video from McDonald's and failure to investigate the victim's mother, whereas the state court claim, Issue 2 in the Rule 3.850 motion, contained these assertions plus assertions concerning counsel's ineffectiveness in allegedly advising Brooks to commit perjury regarding going to a motel on the night of the incident.  Doc. 19 at 134-35; *see* Doc. 19 Ex. P at 16-19.  At the conclusion of the evidentiary hearing, the state post-conviction court denied the Rule 3.850 motion and, concerning Issue 2, made the following findings on the record:

> Second, is that Mr. Brooks contends that Mr. Collins advised him to commit perjury.  I do not accept Mr. Brooks testimony on this point.  I accept Mr. Collins point.  Frankly, it doesn't really make a whole lot of sense, anyway.  Mr. Brooks says ultimately, he testified to the way he was going to testify, anyway.  So certainly, it's inconceivable that there was any prejudice although he contends Mr. Collins asked him to lie, he ignored that advice.

Doc. 19 Ex. U at 75-76.  After stating all his findings on the record, the judge asked if there were any other issues and the following transpired:

> I think I've covered all the issues.  If there was some other minor issue not presented to the Court, I do not find that any prejudice was established by those other minor issues.  Are you aware of any issues, Mr. Campbell that I have not touched on?
>
> MR. CAMPBELL: No, Your Honor.
>
> THE COURT: Mr. Brooks, are you aware of any issues that I have not touched on, raised in your testimony? (Pause).
>
> THE DEFENDANT: There is no merit in this Court.
>
> THE COURT: What's that?

THE DEFENDANT: There is no merit in this Court.

THE COURT: Well, I'll take that as that you don't have any other issues
you wish to raise.  I will do a written order to that effect.

*Id.* at 78-79.

As Respondent argues, to the extent Brooks' federal claim focuses on anything

other that the claim addressed by the state post-conviction trial court, this claim was

abandoned in state court, is not exhausted, and is now procedurally defaulted.  *See*

Doc. 19 at 136-37.  Brooks has not alleged cause or prejudice to excuse the default.

Indeed, as Respondent asserts, Brooks actually presented the claim in his Rule 3.850

motion and then abandoned it at the evidentiary hearing.  *See id.* at 138.

Moreover, even reaching the merits of this claim, no relief is warranted.  The

record supports the state post-conviction trial court's findings and denial of the claim

concerning the allegation that defense counsel advised Brooks to commit perjury.  The

court accepted defense counsel's testimony over that of Brooks on this issue.  Doc. 19

Ex. U at 77.  At the evidentiary hearing, Brooks' trial counsel, David Collins, testified he

has never advised a witness to lie, he took all depositions he believed would be helpful,

he reviewed surveillance video from Red Roof Inn which contradicted some of Brooks'

statements, and he met with Brooks many times to discuss trial preparation:

Q Going to the next issue about advising a witness to lie – in your criminal
practice have you ever advised a witness to lie?

A Never.

Q Did you advise this witness to lie?

A No.

Q During discovery, did you look into recorded statements of the defendant?

A Reported statements of the defendant?

Q Yes, sir.

THE COURT: Recorded statements.

THE WITNESS: Recorded.  Yes, I certainly wanted to make sure when I get the initial discovery what the evidence is, what the government is saying the evidence is.  And under the State rules, we get to look at that a lot; it's not much hidden in state court.  So yes, is the answer.

BY MR. CAMPBELL:

Q Did you avail yourself for depositions in this case?

A Yes, I did take depositions.  I took depositions of every witness that I felt a deposition would be helpful in.  And I will say that there are often times I do not feel depositions are helpful.  And I do not always believe that taking a deposition, if we are proceeding to trial and are not negotiating in pleas, that depositions are always helpful.  So yes, I took depositions.

Q At any point, did you tell in any way, the defendant he needed to lie because you had just found out that they didn't record a statement?

A No.  In fact, when Mr. Brooks says that, that's very problematic for me because first of all, his statement was at issue and it was reported at least three different times, way before we got to trial.  Initially, in the initial interview that he had by law enforcement when he agreed to waive his attorney rights and give a statement, he never stated that he went to the Red Roof Inn.  In fact, he omitted that entirely.

And then subsequently, it's reported that he did make a statement about going to the Red Roof Inn, in which he took B.B., the victim in this case, to the Red Roof Inn with him.  In fact, she had gone into the motel with him.

And then, when I took the deposition of B.B. – I say that for the record – who was the alleged victim.  I believe it was in September, many months before we ever went to trial she said under oath – and I was very clear in the deposition, which I have a copy of, that she never went to the

Red Roof with him, that she never in fact, went to the inside at all.  And, in fact, I believe the video indicated, the surveillance video, that he himself said in the surveillance video, I'm glad I didn't waste any money taking you to the motel.

So, faced with that, all these conflicting statements prior to trial, I really never knew what he was going to say because he had said so many different things that had been contradicted by other things.  I didn't know what he was going to say, so there was no reason for me to tell him and I wouldn't tell him how to testify.

Q Did you talk to him prior to him taking the stand about these previous inconsistent statements and concerns you might have concerning his credibility with the jury?

A Yes.  And in fact that's another thing that bothered me about Mr. Brooks' testimony.  He initially said to you that he only met with me twice, once right before trial and once at the jail.  I met with Mr. Brooks many times in my office and discussed all of these matters.  It was always a concern of mine whether he took the stand, at all.  Generally, most people know me – it's rare when I put my client on the stand.

Anyway, yes, I discussed these things with him.

Q Based on your experience, would you agree that ultimately, it's the defendant's decision on whether or not they testify or not?  You can advise them, but they decide eventually?

A That happened in this case and that was the colloquy.  And again, I don't quite understand Mr. Brooks' statement here today.  He told the Court that he did tell [the] truth.  And quite honestly, I agree with him if he did said [sic] he did tell the truth.  I never knew what the truth was regarding this issue with Mr. Brooks because of the different allegations, different stories in which he was alleged to have said concerning him and the Red Roof Inn.

*Id.* at 53-56.

Further, to the extent Brooks' argument here concerns trial counsel's failure to

obtain any video surveillance from McDonald's, such was not particularly critical to

Petitioner's case and appears cumulative to other evidence and testimony, as

Respondent indicates.  *See* Doc. 19 at 140-44.  In particular, during the trial, B.B.

testified on direct examination that, prior to going to Rickards on the evening in

question, Petitioner drove her to McDonald's and purchased food for her (a chicken

sandwich and a drink) from the drive-thru.  Doc. 19 Ex. D at 121.  In prior statements,

B.B. said that she took her McDonald's bag into the school; however, the security

camera footage from Rickards did not show B.B. carrying a McDonald's bag.  At trial,

defense counsel questioned B.B. about whether she took anything, particularly the

McDonald's bag, into the school:

> Q Now, when you went to Rickards, to the high school?
>
> A yes.
>
> Q And you've seen the video tape; correct?
>
> A Yes.
>
> Q You didn't take anything inside the locker room, did you?
>
> A No, but I thought I did.
>
> Q You can explain.  But you didn't, did you?
>
> A No.
>
> Q You didn't bring anything out with you, did you?
>
> A Not that I can remember.
>
> Q Well – and the reason you just said "I thought I did" was because you said in the past, okay –
>
> A Yes.
>
> Q – when you've been asked questions about this, that you took your McDonald's inside and ate it in the locker room; isn't that true?

A I didn't say I ate, I had moved things over, I had grabbed it.

Q Well, you said you had put things – your McDonald's food on the table?

A On the table, yes.

Q Isn't that true?

A Yes.

Q Okay.  And when you had said that in the past, that one time was at deposition, wasn't it?

A Yes.

Q And you swore to tell the truth, then, right.

A Yes.

Q And so today you're telling the jury that you were just mistaken about that; correct?

A Yes, because I recall moving, grabbing something as I was wanting to leave.

Q But, you not only said that in your deposition, you also said it in your initial statement to the police officers; didn't you?

A Yes.

Q In fact, you said I had my McDonald's right here, and you gestured with your right hand; isn't that true?

A Yes.

Q And you were sworn to tell the truth then, too, weren't you?

A Yes.

Q So you were mistaken twice, isn't that true?

A Yes.  Over McDonald's.

Q Under oath you were mistaken twice, isn't that true?

A Yes.

Q And isn't it true that really the only time that you either forgot or you make a different statement about it now, is when you were confronted with the video, that showed you never took any McDonald's into that locker room; isn't that true?

A Yes.

Q Okay.  And so – and when did you see that, yesterday or today?

A Last week, last –

Q Last week?

A  – Friday.

Q So all the way from April 23rd – excuse me, May 3rd, of last year, until last Friday when you were confronted with the video that showed you had no McDonald's, you had said twice under oath, I took my McDonald's in; correct?

A Yes.

Q And again, you were certain that you had your McDonald's there weren't you?
A Yes.

Doc. 19 Ex. D at 146-48.

Brooks testified at trial that, on the evening in question, he took B.B. first to Rickards, and he asked her to wait in the car (which she did not do) while he went to his office to get some money; and then he drove her to McDonald's.  Doc. 19 Ex. D at 211-16.  Thus, Brooks does not dispute that he took B.B. to McDonald's and bought her food; the only discrepancy between Brooks' testimony and that of B.B. on this point concerns whether the McDonald's trip occurred before or after the stop at Rickards.

*See id.* at 216-17.  Defense counsel had cross-examined B.B. on this point and

established she did not have the McDonald's bag at Rickards.  Accordingly, any

McDonald's surveillance video does not appear to have been necessary to discredit

B.B.'s version of the events, and counsel was not deficient for not obtaining any such

video, even assuming it had been available.  Even if counsel was deficient in this

respect, Brooks cannot show prejudice because, as he acknowledges, this case

presented a credibility contest between Petitioner and B.B., both of whom testified

Brooks picked her up that night and took her to Rickards (where the alleged incident

occurred) and McDonald's.  Regardless of the timing of the trip to McDonald's, the jury

evidently believed B.B. on the issue of whether the molestation at Rickards occurred.

Brooks has not shown that any state courts' ruling rejecting the claims in this

ground resulted in a decision that was either (1) contrary to, or involved an

unreasonable application of, clearly established U.S. Supreme Court precedent, or (2)

based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2); *see, e.g.*, Waters, 46

F.3d at 1518-19; Dingle, 480 F.3d at 1099.  This ground should be denied.

### Ground (16): IAC – Failure to Form Affirmative Defense

In this ground, Petitioner Brooks asserts his trial counsel rendered ineffective

assistance in failing to form an affirmative defense for Brooks.  Doc. 1 at 13.  Brooks

alleges the following supporting facts:

> Trial counsel was told that alleged victim came on to him and that
> Petitioner put her into a child's place.  However, Trial Counsel never
> formed this defense.  Petitioner submits that this is true because the

> alleged victim build nerves to call the Petitioner late night hours after using drugs.  [Trial Exhibits, pg. 54-56].  The alleged victim stated that she had had sex with a grown man unprotected three days prior to calling Petitioner.  The child was scared and believed that she was pregnant and, therefore, needed a successful man to help her. [Exhibit B, Initial 3.850 Brief, Statement of the Facts, pgs. 8-12].  She wanted Petitioner to engage in sex with her so that her potential child would be blamed on him.  This is clarified when alleged victim stated that she and her two friends were going to run a train on Petitioner.

*Id.* Brooks indicates he raised this claim in state court as Issue 4 in his Initial Brief in the appeal of the denial of his Rule 3.850 motion, asserting "the Circuit Court erred by not establishing that Counsel was ineffective for not investigating Appellant's case and forming an affirmative defense, pgs. 31-38." *Id.*

As Respondent explains in its answer, no such claim or argument concerning the support facts set forth above appears in Brooks' Initial Brief filed in his appeal from the denial of his Rule 3.850 motion.  Doc. 19 at 144-45; *see* Doc. 19 Ex. X at 31-38.  At best, this claim appears only in "Ground Two" of Petitioner Brooks' "Reply Brief for Post Conviction 3.850 Motion," filed in the state post-conviction trial court prior to the evidentiary hearing, when Brooks states that "[t]rial counsel was told that B.B. came on to him" and "B.B. sated that she had sex with a man named Lee on April 19, 2006; She advised that everyone knew that the Defendant had had sexual intercourse with a student," under the claim asserting "trial counsel was ineffective when he advised defendant to commit perjury and avoid investigating aspects of defendant's case."  Doc. 19 Ex. Q at 122.  Respondent asserts that Petitioner did not fairly present this federal ground to the state courts and, thus, failed to exhaust it.  Doc. 19 at 145-47.

Indeed, Brooks made no mention of this particular claim during the evidentiary hearing in state court.  *See* Doc. 19 Ex. U at 15.  Although Brooks indicated during that hearing that one of his grounds involved defense counsel's alleged failure to investigate his case, his claim there focused on defense counsel "asking me to commit perjury" and defense counsel's alleged failure to impeach the victim with her prior inconsistent statements, as set forth and analyzed in Grounds 7, 13, and 15, *supra*.  *Id.* at 15-17, 19-22.  Therefore, to the extent Brooks actually presented the claim in his Rule 3.850 proceedings (albeit in his reply to the State's answer to his motion), he effectively abandoned it at the evidentiary hearing and in the subsequent appeal.  Brooks has not alleged cause or prejudice to excuse the default.

In his reply filed in this Court, Brooks asserts he is actually innocent, apparently in an effort to excuse any procedural default so that his ground(s) may be considered on the merits.  Doc. 21 at 2.  *See* Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012).  "This exception is exceedingly narrow in scope, as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  To show actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Further, "[t]o meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  Johnson, 256 F.3d at 1171 (quoting Schlup, 513 U.S. at 327).  Here, Petitioner Brooks claims that

he is actually innocent without providing any evidence, much less any new, reliable evidence, to support his claim.  *See* Johnson, 256 F.3d at 1172.  Indeed, this ground involves Brooks' claim that his attorney failed to present an affirmative defense (albeit an inapplicable one, as explained *infra*), which, at best, asserts merely legal innocence, not factual innocence.  *See* Rozzelle, 672 F.3d at 1015 (setting forth case law concerning actual innocence and affirmative defenses and explaining: "Today, we need not decide whether Schlup permits a claim of actual innocence based on 'new reliable' evidence of a complete affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal. . . . Rather, we decide only that the narrow and extraordinary nature of Schlup's actual innocence 'gateway' does not extend to petitioners, like Rozzelle, who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide."); Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1274 (11th Cir. 2004) (en banc) ("Actual factual innocence is required; legal innocence is not enough.").

Nevertheless, the State cannot rely on procedural default "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial."  Martinez v. Ryan, 132 S.Ct. 1309, 1318 (2012).  Here, as indicated above, the state post-conviction trial court denied Brooks' request for appointment of counsel for the Rule 3.850 evidentiary hearing.  Given this, and the holding of Martinez, it appears that Brooks may have cause for the procedural default.

Brooks' claim fails on the merits, however, because as the trial court instructed the jury, "[n]either B.B.'s lack of chastity, nor consent is a defense to the crime charged."

*Id.* at 280; *see* §§ 800.04(2), (5), Fla. Stat. (2005) (proscribing lewd or lascivious molestation and providing "[n]either the victim's lack of chastity nor the victim's consent is a defense to the crimes proscribed by this section").  Brooks' defense at trial was that he had never touched the victim in an inappropriate way.  *See* Doc. 19 Ex. D at 214-15 (Brooks' trial testimony), 328 (defense counsel's closing argument to jury: "You have got to decide if three happened," referring to jury instruction previously given by judge ("Three, A, Cedric O. Brooks intentionally touched in a lewd or lascivious manner the breasts or the clothing covering the breasts of B.B.; or B, Cedric O. Brooks forced or enticed B.B. to touch in a lewd or lascivious manner the genitals, genital area, clothing covering the genitals, or clothing covering the genital area of Cedric O. Brooks." *Id.* at 280)).

Based on the foregoing, this ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Brooks is not entitled to federal habeas relief. The § 2254 petition (Doc. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Brooks' § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 11, 2014.

S/  Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this**

report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.